[Cite as *Adams v. Enon*, 2012-Ohio-6178.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

| | | |
|---|---|---|
| VIKKI ADAMS | : | |
| **Plaintiff-Appellant** | : | C.A. CASE NO. 2012-CA-42 |
| vs. | : | T.C. CASE NO. 2011-CV-1185 |
| VILLAGE OF ENON | : | (Civil Appeal from the Common Pleas Court) |
| **Defendant-Appellee** | : | |

· · · · · · · · ·

**O P I N I O N**

Rendered on the 28th day of December, 2012.

· · · · · · · · ·

Erica Ann Probst, Atty. Reg. No. 0073486, 88 West Mound Street, Columbus, Ohio 43215
      **Attorney for Plaintiff-Appellant**

Lynnette Dinkler, Atty. Reg. No. 0065455, 2625 Common Boulevard, Suite A, Dayton, Ohio 45431
      **Attorney for Defendant-Appellee**

· · · · · · · · ·

GRADY, P.J.:

{¶ 1} This is an appeal from a final order dismissing an action on a claim for relief brought pursuant to R.C. 4123.90. That section provides, in pertinent part:

No employer shall discharge, demote, reassign, or take any punitive

action against any employee because the employee filed a claim or instituted,

pursued or testified in any proceedings under the workers' compensation act

for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. Of the Revised Code plus reasonable attorney fees. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge, demotion, reassignment, or punitive action taken, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken. (Emphasis added).

{¶ 2} Plaintiff Vikki Adams ("Adams") was employed as a police officer by Defendant Village of Enon ("Enon"). Adams suffered an on-the-job injury for which she was awarded workers' compensation benefits. Enon terminated Adams from her employment, effective November 9, 2011.

{¶ 3} On December 2, 2011, Adams filed a complaint alleging that her termination violates R.C. 4123.90 because "the reasons for the termination were to retaliate against

Plaintiff for filing one and/or multiple workers' compensation claims." [Dkt. 1, paragraph 10].

The complaint further alleged, at paragraph 13:

> Defendant [1] (sic) provided notice to Defendant within ninety days of her
>
> termination of her claim of workers' compensation retaliation by service of this
>
> Complaint within ninety days from her termination.

{¶ 4}  Enon filed an answer denying the allegations in paragraph 13 of the complaint, and further pleading as an affirmative defense that "Plaintiff has not complied with the requirements of R.C. 4123.90 and is therefore barred from pursuing this action." [Dkt. 3, paragraph 30].

{¶ 5}  On March 16, 2012, Enon filed a combined Civ.R. 12(B)(1) motion to dismiss for lack of jurisdiction of the subject matter of Adams's claim for relief or, alternatively, a Civ.R. 56 motion for summary judgment on Enon's R.C. 4123.90 affirmative defense.  Two exhibits were attached to Enon's motion.  Exhibit B is a copy of Adams's denial to the following request for admissions by Enon.   It states:

> 1.    Admit that the Village of Enon did not receive written notice of a
>
>        claimed violation of Ohio Revised Code §4123.90 before Plaintiff
>
>        instituted her instant lawsuit in the Clark County Court of Common
>
>        Pleas Case No. 11 CV 1185.

---

[1] We construe the allegation to mean that the complaint which Adams claims satisfied the R.C. 4123.90 notice requirement was served on Defendant Enon by "Plaintiff" Adams, not by "Defendant" Enon.

Deny. Section 4123.90 of the Ohio Revised Code requires that Defendant receive Notice of a violation within 90 days of the retaliatory conduct, here termination. Plaintiff's Notice was sent and received by the Defendant within 90 days. Specifically, the lawsuit was filed and served upon Defendant within 90 days of termination and was in writing. It contained the required notice. The statute does not require that a notice be sent separately from the lawsuit only that it be sent within 90 days. (Emphasis added).

{¶ 6} On April 2, 2012, Adams moved to amend her complaint pursuant to Civ.R. 15(A) to add two new claims for relief: a claim for employment discrimination on account of a disability and a claim for employment discrimination on account of age, both in violation of R.C. 4112.02 and authorized by R.C. 4112.99. Adams renewed that motion on April 19, 2011, attaching another proposed amended complaint.

{¶ 7} On May 24, 2012, the trial court entered a judgment which states, in its entirety:

Defendant's motion to dismiss this case for failure to comply with written notice requirements under R.C. 4123.90 is SUSTAINED. Defendant's failure to provide written notice deprives this court of jurisdiction.

Pursuant to the ruling on defendant's motion all other pending motions are deemed MOOT and the August 14, 2012 civil pre-trial is VACATED.

IT IS SO ORDERED.

{¶ 8} Adams filed a timely notice of appeal from the judgment of May 24, 2012.

{¶ 9} First assignment of error:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED VILLAGE OF ENON'S MOTION TO DISMISS."

{¶ 10} Second assignment of error:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED VILLAGE OF ENON'S MOTION FOR SUMMARY JUDGMENT."

{¶ 11} Addressing these assignments of error in reverse order, we first overrule the second assignment of error. It is plain from the face of the May 24, 2012 judgment that the trial court granted Enon's Civ.R. 12(B)(1) motion to dismiss Adams's action on her R.C. 4123.90 claim for relief for lack of subject matter jurisdiction. That ruling rendered the controversy between the parties on that issue moot, because no further judgment on any other aspect of the same claim for relief could then have any practical legal effect. The trial court did not err when it failed to rule on Enon's alternative motion for summary judgment.

{¶ 12} With regard to the first assignment of error, compliance with the time of filing the notice, the place of filing, and the content of the notice as specified by R.C. 4123.90 are all conditions precedent to invoking the court's subject matter jurisdiction to adjudicate an alleged violation of that section, and failure to serve the written notice on the employer is a jurisdictional defect requiring dismissal of the claim for relief. *Cross v. Gertenslager Co.,* 63 Ohio App.3d 827, 580 N.E.2d 466 (9th Dist. 1989); *Miller v. Premier Industrial Corp.,* 136 Ohio App.3d 662, 737 N.E.2d 594 (8th Dist. 2000).

{¶ 13} It is undisputed that Adams served no form of notice of her claimed violation of R.C. 4123.90 on Enon apart from the complaint she filed in the present action on December 2, 2011 and caused to be served on Enon. Consistent with the allegations of paragraph 13 of

her complaint, and her response to Enon's request for admissions quoted above, Adams argues that the complaint Enon was served satisfied the notice requirement in R.C. 4123.90. Adams contends that nothing in that section indicates a legislative intent that the notice must be received by the employer prior to filing a complaint alleging a violation of R.C. 4123.90. We do not agree.

{¶ 14} R.C. 4123.90 expressly states that "no action may be instituted" on a claim for relief authorized by that section "unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken." (Emphasis added). By adding "ed" to the base form of the regular verb "receive," and combined with "has," the text of R.C. 4123.90 uses the past perfect tense of "receive" to indicate an action which was completed before another past action. That other past action is, of course, the institution or commencement of an action on an R.C. 4123.90 claim, the necessary first step of which is the filing of a complaint. Civ.R. 3(A). Because the notice requirement must be completed before the complaint is filed, the complaint or its service on the employer cannot constitute receipt of the notice mandated by R.C. 4123.90.

{¶ 15} Even if the complaint served on Enon might be construed to satisfy the notice requirement of R.C. 4123.90, on this record it could not have done so. The clerk's summary of docket and journal entries states that the complaint and summons were served on Enon by certified mail on December 13, 2011, eleven days after Adams filed her complaint instituting her action on December 2, 2012. That sequence of events is the reverse of what the statute requires.

{¶ 16} Finally, Adams argues that an article published in the Village of Enon newspaper created the required notice, and that "[l]ikely, the Village of Enon received a copy of its own newspaper or had knowledge of it." (Brief, p.16). The contention is speculative. Further, "notice" assumes a statement sent directly to the recipient by the party giving notice, and a general publication does not satisfy the requirement. Furthermore, even if the article could rise to that level, we note that the article was published on December 4, 2011, two days <u>after</u> Adams filed her complaint instituting the action on her R.C. 4123.90 claim for relief.

{¶ 17} The dissenting opinion is predicated on the proposition that because the content and timing of the notice requirements in R.C. 4123.90 are ambiguous, R.C. 4123.95 requires us to construe those requirements liberally in Adams's favor. However, the mandate in R.C. 4123.95 does not permit a court to read into a worker's compensation statute something which cannot reasonably be implied from the language of the statute. *Valentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580 (4th Dist.). Further, while the notice provisions in R.C. 4123.90 may be inartfully drafted, they are not ambiguous with respect to the content and timing of the required notice because they are not susceptible to more than one reasonable interpretation. *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 741 N.E.2d 121 (2001). Filing and timely service of a complaint are necessary to commence a civil action. Civ.R. 3(A). It is not a reasonable interpretation of R.C. 4123.90 to hold that service of the complaint on the employer likewise satisfies the employee's statutory duty to provide the employer notice that the employee intends to commence the same action. That interpretation of R.C. 4123.90 renders its notice

requirement a vain act, and it is not reasonable to hold that it was the General Assembly's purpose in enacting R.C. 4123.90.

{¶ 18} The first and second assignments of error are overruled.

{¶ 19} Third assignment of error:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED OR DETERMINED TO BE MOOT VIKKI ADAMS' MOTION FOR LEAVE TO AMEND COMPLAINT."

{¶ 20} The trial court did not deny Adams's motion for leave to amend her complaint by adding two new claims for relief alleging employment discrimination based on age and disability, nor did the court otherwise rule on the merits of Adams's motion. Instead, the court dismissed the motion as moot.

> As a general matter, courts will not resolve issues that are moot. Courts cannot entertain jurisdiction over a moot question. Actions are "moot" when they are or have become fictitious, colorable, hypothetical, academic, or dead; the distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations. A "moot" case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any practical effect upon a then-existing controversy. Cases are not moot when an actual controversy exists between adverse litigants.

23 Ohio Jurisprudence 3d, Actions, § 26.   (Internal citations omitted.)

{¶ 21} App.R. 15(A) provides, in pertinent part:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served.  Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party.  Leave of court shall be freely given when justice so requires.

{¶ 22} Adams's motion for leave to amend her complaint was filed while her action against Enon remained pending.  The motion alleged an actual controversy between Adams and Enon concerning which a judgment on the motion could have a practical legal effect, whether the motion was granted or denied.  Therefore, the motion was not rendered moot by the court's dismissal of Adams's R.C. 4123.90 claim for relief for lack of jurisdiction of the subject-matter of that claim.

{¶ 23} Enon argues that the trial court could properly deny the motion on several grounds.  Those grounds involve the merits of Adams's motion.  On remand, the trial court must determine the merits of the arguments the parties present, and rule accordingly.

{¶ 24} The third assignment of error is sustained.

{¶ 25} Having sustained the third assignment of error, the case will be remanded to the trial court for further proceedings on Adams's Civ.R. 15(A) motion for leave to amend her

complaint, consistent with this opinion. The judgment of the trial court is otherwise affirmed.

Hall, J., concurs.

FROELICH, J., concurring in part and dissenting in judgment.

{¶ 26} I agree that issues regarding the motion for leave to amend the complaint were not rendered moot by the dismissal of the claim brought under R.C. 4123.90. Therefore, I concur in the resolution of the third assignment of error. For the following reasons, I dissent from the resolution of the first and second assignments of error and the judgment of the court.

{¶ 27} Adams was discharged from her employment with the Village of Enon on November 6, 2011, and she filed a written complaint with the trial court on December 2, 2011. In Count One of the complaint, Adams specifically raised a violation of R.C. 4123.90. Because the complaint was served on the Village on December 12, 2011, the Village received notice of the alleged violation about 36 days after the discharge occurred.

{¶ 28} R.C. 4123.90 provides, in pertinent part, that:

No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon

demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge, demotion, reassignment, or punitive action taken, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken.

{¶ 29} This part of R.C. 4123.90, which allows claims for retaliatory discharge, was added to the statute in 1978. See Am. H.B. 1282, Ohio Laws, Part II, 3934, 3961-62. It has remained essentially the same since it was enacted. The provision does not specify, nor does it limit, the manner in which an employer is to receive written notice of a claimed violation. In fact, R.C. 4123.90 only refers to the employer's receipt of notice; it does not even state who must provide the written notice, or how it can be provided.

{¶ 30} In construing statutes, "our paramount concern is the legislative intent in enacting the statute. In determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage." (Citations omitted.) *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. Courts "discern the legislature's purpose and attempt to carry it out, but do not prostitute the language in doing so and do not construe the

words in a way which would result in unfairness to those who have to interpret them for themselves." [2]

{¶ 31} In concluding that a separate written notice must be provided before a complaint is filed (even if the complaint is filed within 90 days), the majority opinion relies on the legislature's use of the words "no action may be instituted * * * unless the employer has received written notice." However, this interpretation does not give sufficient emphasis to the legislature's additional use of the word "maintained," which must have a different meaning than "instituted," or else it is a mere redundancy. Specifically, R.C. 4123.90 states that "no action may be instituted or *maintained* unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge." (Emphasis added.)

{¶ 32} One definition of "institute" is to "originate" or "cause to come into existence." Wester's Third New International Dictionary 1171 (1969). In contrast, "maintain" is defined as "to persevere in" or to "continue." *Id*. at 1362.

{¶ 33} By inserting a reference to continuing an action, the legislature left room for the interpretation that delivery of notice may include written notice given via a complaint, so long as the complaint (i.e., notice) is filed within the 90-day period provided for giving written notice to the employer. That is, the statute gives two choices (without any preference): (1) give a separate written notice within 90 days and then file suit within 180 days (or else the

---

[2] Merz, *Plain Meaning Rule*, 4 U. Dayton L. Rev. 31, 40 (1979).

plaintiff may not institute an action after 90 days or maintain an action after 180 days); or (2) institute an action within 90 days and the action may thereafter be maintained.

{¶ 34} At a minimum, R.C. 4123.90 is ambiguous, and this is a reasonable interpretation, particularly since the legislature failed to specify or limit the manner in which notice must be received. "Ambiguity exists if the language of the statute is susceptible of more than one reasonable interpretation." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40, 741 N.E.2d 121 (2001).

{¶ 35} If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

(A) The object sought to be attained;

(B) The circumstances under which the statute was enacted;

(C) The legislative history;

(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

(E) The consequences of a particular construction;

(F) The administrative construction of the statute. R.C. 1.49.

{¶ 36} Even before R.C. 4123.90 was amended in 1978 by Am. H.B. 1282, R.C. 4123.95 provided that "R.C. Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." Accordingly, the legislature intended R.C. 4123.90 to be construed liberally in favor of employees.

{¶ 37} Regarding the purpose of the law under which 4123.90 was amended, Am. H.B. 1282 contains various provisions that are intended to benefit employees and extend protection to them. See Am. H.B. 1282, effective December 11, 1978, and January 1, 1979, 137 Ohio Laws, Part II, 3934. For example, the law as amended: (1) requires employers to reimburse employees for expenses and lost wages, where the employer makes employees submit to medical examinations; (2) restricts the administrator's rights to take appeals where an employer was represented at a hearing; (3) increases the monetary amounts injured employees are entitled to receive for the first twelve weeks of total temporary disability; (4) extends protection to individuals who refuse to consent to autopsy exams based on bona-fide religious convictions; (5) adds protection against retaliation for employees who make workers' compensation claims; (6) extends workers' compensation protection to "work-relief employees," i.e., those who exchange services or labor for public relief given in the form of goods or services; and (7) guarantees benefits to employees of non-complying employers. *Id.* at 3936-3937, 3940, 3945, 3960, 3961-3962, and 3964 (amending R.C. 4123.43(F), R.C. 4123.516, R.C. 4123.56, R.C. 4123.68(BB), R.C. 4123.90, R.C. 4127.01, and R.C. 4127.10). The legislature's purpose appears to be to benefit and protect employees.

{¶ 38} The legislation does not discuss the circumstances under which it was enacted, so that would be a neutral factor. Regarding legislative history, the legislation remained virtually the same throughout the legislative process, as did the notes accompanying the legislation. The legislative notes, themselves, are not significantly illuminating. As an example, the notes accompanying the bill after passage by the House and as reported to the Senate by the Committee on Commerce and Labor on November 29, 1978, state as follows:

Employer Retaliation

The bill prohibits employers from discharging, demoting, reassigning or taking any other punitive action against employees because they file a claim or testify in any proceeding under the workers' compensation law with respect to a compensable injury or occupational disease. An employee who is damaged by an employer violation may file an action in the common pleas court of the county in which he is employed. (Lines 37.28-37.34).

The bill limits the relief granted to the aggrieved employee to reinstatement with back pay if fired or to an award of wages lost on account of a reassignment, demotion, or other punitive action. Any money received as a result of the suit is to be offset by any unemployment compensation benefits, temporary total disability benefits, and wages received during the time of the violation. The employee is entitled also to recover reasonable attorney fees (lines 37.35-38.5).

The bill bars any suit under this provision if not filed with a court within 180 days of the alleged violation and unless the employee gives the employer written notice of the violation within 90 days (lines 38.6-38.12). Am. H.B. 1782, as reported by the S. Committee on Commerce and Labor, p. 5, Ohio Legislative Service Comm.1977-1978, LSC Box 17.

{¶ 39} While the legislative notes are not detailed, they do not support the proposition that separate notice must be received prior to the time the employee files the action; they

merely indicate that the employee must give the employer notice of the violation within 90 days.

{¶ 40} The fourth factor mentioned in determining legislative intent refers to the common law or former statutory provisions, including laws on the same or similar subjects. Prior to the amendment of R.C. 4123.90, no common law action for retaliation existed in the context of workers' compensation cases. Instead, Ohio followed the rule that employment was terminable-at-will for any reason that is not contrary to law. *See, e.g.*, *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985), and *Fawcett v. G. C. Murphy & Co.*, 46 Ohio St.2d 245, 249-250, 348 N.E.2d 144 (1976) (rejecting the contention that an employer's right to terminate at will is limited by " 'principles which protect persons from gross or reckless disregard of their rights and interests, wilful, wanton or malicious acts or acts done intentionally, with insult, or in bad faith.' ")

{¶ 41} Other similar laws existed when R.C. 4123.90 was enacted, and do clearly provide for pre-suit notification. This indicates that the Ohio legislature could have included specific language to this effect in R.C. 4123.90, if that is what the legislature intended. For example, R.C. 727.43 has stated as follows since its enactment in 1962:

> No person who claims damages, arising without his fault from the acts of a municipal corporation or its agents in the construction of a public improvement, shall commence a suit therefor against a municipal corporation until he files a claim for such damages with the clerk of such municipal corporation, and sixty days elapse thereafter, to enable the municipal corporation to take such steps as it deems proper to settle or adjust the claim.

{¶ 42} The use of the words "no person * * * shall commence a suit * * * until he files a claim" clearly indicate the notice requirements. The remainder of the statute also explains why prior notice is deemed a prerequisite to suit.

{¶ 43} The Village of Enon suggests in its brief that the ninety-day time period in R.C. 4123.90 was intended to give employers time to retract their retaliatory actions before suit, but even under the Village's interpretation of legislative intent, an employee could give separate notice one day (within the 90 days) and institute an action the next day. If that were the intent, the legislature had a ready example in R.C. 727.43 of how to phrase the requirement to provide for a "cure" period. The legislature failed to incorporate such language in R.C. 4123.90.

{¶ 44} R.C. 1923.04, which outlines requirements for eviction, contains a similar requirement for delivery of notification before bringing an action. This statute has remained unchanged in pertinent part since G.C. 10451 was amended in 1929, meaning, again, that the legislature knew how to communicate its intent.

{¶ 45} Prior to its amendment in 1929, G.C. 10451 stated that "A party desiring to commence an action under this chapter, must notify the adverse party to leave the premises, for the possession of which action is to be brought * * * three days before." This section was amended in 1929, to provide that "A party desiring to commence an action under this chapter, must notify the adverse party to leave the premises, for the possession of which action is to be brought * * * three or more days before bringing the action, by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode." Ohio Laws 113, v. 480. The current statute, R.C. 1923.04, contains essentially the same language.

Again, the legislature knew how to express its wishes regarding whether notice is required before an action is filed.

{¶ 46} The fifth factor in deciding legislative intent relates to the consequences of a particular interpretation. The Village received notice a little over a month after the alleged wrongful discharge, and almost five-months before the deadline for filing a lawsuit would have expired. The Village received notice well within the 90-day period, and has not even suggested how it was prejudiced.

{¶ 47} Finally, R.C. 4123.90 is not mentioned in the Ohio Administrative Code, so that is a neutral factor as well.

{¶ 48} As much as legislative intent is relevant, it does not supersede what the statute says or doesn't say. Justice Holmes once opined, "[w]e do not inquire what the legislature meant; we ask only what the statute means." [3]

{¶ 49} Given the ambiguity in the statute, the fact that more than one reasonable interpretation exists, and the factors in R.C. 1.49, which weigh in favor of Adams's position, I would conclude that Adams properly complied with the requirements of R.C. 4123.90.

{¶ 50} I also note that resort to federal statutes illustrates that Congress, as well, has demonstrated an ability to write statutes in a manner that expresses the specific intent to make notice a requirement before a litigant files suit. For example, 29 U.S.C. 633a(a) prohibits age discrimination in federal government employment, and authorizes civil actions by aggrieved

---

[3] Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harvard L. Rev. 417, 419 (1899).

parties, pursuant to 29 U.S.C. 633a(c). Unlike R.C. 4123.90, 29 U.S.C. 633a(d) states specifically that:

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

{¶ 51} It is also worth noting that even though the notice provision in 29 U.S.C. 633a(d) is clear, it has been held non-jurisdictional. In *Forester v. Chertoff*, 500 F.3d 920 (9th Cir. 2007), the Ninth Circuit Court of Appeals stated that:

> We conclude that the 30-day waiting period in 29 U.S.C. § 633a(d) is not jurisdictional in the sense that a district court lacks any authority to grant relief when a complaint is filed prematurely. Section 633a(c) provides for jurisdiction of federal district courts over discrimination claims pursuant to the ADEA. * * * District courts are broadly authorized to exercise subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Only Congress may classify a statute as jurisdictional. *Kontrick v. Ryan*, 540 U.S. 443, 452, 124 S.Ct. 906,

157 L.Ed.2d 867 (2004). However, Congress did not place the 30-day waiting period within the specific provision that confers jurisdiction on the federal district courts. Moreover, because "time prescriptions, however emphatic, are not properly typed 'jurisdictional,' " the mandatory language in § 633a(d) does not support an interpretation of its time prescriptions as "jurisdictional." *Arbaugh*, 126 S.Ct. at 1242 (citation omitted). Accordingly, we hold that the time prescriptions in 29 U.S.C. § 633a, including the 30-day waiting period, are not jurisdictional and may be forfeited, waived, or equitably modified. (Footnote and citation omitted.) 500 F.3d at 928 -929.[4]

**{¶ 52}** On the jurisdictional issue, the United States Supreme Court recently commented on its own use of "jurisdictional," as follows:

This Court has endeavored in recent years to "bring some discipline" to the use of the term "jurisdictional." *Henderson v. Shinseki*, 562 U.S. ——, ——, 131 S.Ct. 1197, 1202–1203, 179 L.Ed.2d 159 (2011). Recognizing our "less than meticulous" use of the term in the past, we have pressed a stricter distinction between truly jurisdictional rules, which govern "a court's adjudicatory authority," and nonjurisdictional "claim-processing rules," which do not. *Kontrick v. Ryan*, 540 U.S. 443, 454–455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or

---

[4]The incomplete citation refers to *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

have not presented. See *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety. "[M]any months of work on the part of the attorneys and the court may be wasted." *Henderson*, 562 U.S., at ——, 131 S.Ct., at 1202. Courts, we have said, should not lightly attach those "drastic" consequences to limits Congress has enacted. Ibid.

We accordingly have applied the following principle: A rule is jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). But if "Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." * * * (Citation and footnote omitted.)

 *Gonzalez v. Thaler*, ___ U.S. ___, ___, 132 S.Ct. 641, 648 -649, 181 L.Ed.2d 619 (2012).

{¶ 53} Another federal statute that contains a "notice" requirement is the citizen suit provision of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. 6972 (a)(1)(A), which permits an individual to commence a civil action against any person, government instrumentality, or agency, to enforce waste disposal regulations. However, 42 U.S.C. 6972(b)(1) states that "No action may be commenced * * * (A) prior to 60 days after the plaintiff has given notice of the violation to" various parties, including any alleged violator.

Again, unlike R.C. 4123.90, this statute unambiguously requires notice to be provided before an action may be commenced.

{¶ 54} The United States Supreme Court held that with regard to this statute, that:

The language of this provision could not be clearer. A citizen may not commence an action under RCRA until 60 days after the citizen has notified the EPA, the State in which the alleged violation occurred, and the alleged violator. Actions commenced prior to 60 days after notice are "prohibited." Because this language is expressly incorporated by reference into § 6972(a), it acts as a specific limitation on a citizen's right to bring suit. Under a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit. *Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

{¶ 55} However, due to its "literal interpretation" of the statute, the Supreme Court declined to consider whether the notice provision was jurisdictional in the "strict sense of the term." Instead, the court relied on the general rule that "if an action is barred by the terms of a statute, it must be dismissed." *Id*. at 31. In view of the Supreme Court's later observations in *Gonzalez*, the notice provision in 42 U.S.C. 6972(b)(1) would no longer be considered "jurisdictional." That does not mean the action could not be dismissed for a failure to comply with its requirements. And, as with the other statutes cited, the point is that both Congress and the Ohio legislature know how to draft statutes that are clear.

{¶ 56} Since I conclude that Adams complied with the requirements of R.C. 4123.90, I would not even reach the issue of whether the alleged failure to comply is jurisdictional.

However, in concluding that Adams's alleged failure to send a notice before filing the complaint deprived the trial court of subject matter jurisdiction, the majority opinion relies on *Cross v. Gerstenslager Co.,* 63 Ohio App.3d 827, 580 N.E.2d 466 (9th Dist.1989), and *Miller v. Premier Indus. Corp*., 136 Ohio App.3d 662, 737 N.E.2d 594 (8th Dist. 2000).

**{¶ 57}** Both *Cross* and *Miller* differ factually from the case before us, because no written notice was ever provided to the defendant, and the complaints in each situation were not filed within 90 days of the adverse employment action.   63 Ohio App.3d at 466; 136 Ohio App.3d at 662.   Thus, the employer never argued that the complaints in those cases satisfied the 90-day notice provision.

**{¶ 58}** Putting this factual distinction aside, the Ninth District Court of Appeals concluded in *Cross* that the plaintiff's failure deprived the trial court of subject matter jurisdiction.   The federal case cited for this holding, however, did not base its decision on lack of subject matter jurisdiction.   See *Smith v. Capitol Mfg. Co., a Div. of Harsco Corp*., 626 F.Supp. 110 (S.D.Ohio 1985).    In *Smith*, the plaintiff brought a federal action for violation of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a), as well as pendent state claims, including a wrongful discharge claim under R.C. 4123.90.   After dismissing the federal claim, the federal district court noted that R.C. 4123.90 provides a substantive right to bring a wrongful action for discharge.   *Id*. at 112.   The federal court then made the following two-line statement:

It is undisputed that the plaintiff failed to bring a suit within 180 days

of his discharge and that he failed to provide notice to the defendant of the

alleged violation. Accordingly, the plaintiff may not assert a claim against the defendant under the statute. *Id*.

These two sentences comprise the entirety of the court's analysis, and there is no mention of "subject matter jurisdiction" (and again, there was no suit as separate notice within 90 days).

{¶ 59} Likewise, in *Miller*, the Eighth District Court of Appeals simply cited *Cross* and other cases that had relied on *Cross's* brief reference to subject matter jurisdiction. *Miller*, 136 Ohio App.3d at 673.

{¶ 60} In *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11, the Supreme Court of Ohio noted that:

"Jurisdiction" means "the courts' statutory or constitutional power to adjudicate the case." (Emphasis omitted.) *Steel Co. v. Citizens for a Better Environment* (1998), 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210; *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 87, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. The term encompasses jurisdiction over the subject matter and over the person. * * * Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time. * * * It is a "condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void." *Id*.; *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus.

{¶ 61} Consistent with the observation of the United States Supreme Court in *Gonzalez*, the Supreme Court of Ohio stressed in *Pratts* that "Jurisdiction has been described

as 'a word of many, too many, meanings.' * * * The term is used in various contexts and often is not properly clarified. This has resulted in misinterpretation and confusion." 2004-Ohio-1980 at ¶ 33, quoting *United States v. Vanness*, 85 F.3d 661 (C.A.D.C. 1996). The Supreme Court of Ohio went on to explain that "[s]ubject-matter jurisdiction is a court's power over a type of case. It is determined as a matter of law and, once conferred, it remains." *Id*. at ¶ 34.

{¶ 62} In view of this analysis by the Supreme Court of Ohio, I disagree with the conclusion that failure to comply with the notice requirements in R.C. 4123.90 deprives a trial court of subject matter jurisdiction. I would instead, conclude that failure to comply, like other statutory requirements, is non-jurisdictional and may be waived by a party's failure to timely raise the matter. This probably would not affect the majority's disposition of the case because Enon timely raised its argument.

{¶ 63} I also disagree that it is "undisputed" that the employer received no written notice of the claimed violation apart from the complaint. Adams filed a Civ.R.56(F) affidavit with the trial court, stating that she had filed for unemployment benefits and had mentioned her claim for wrongful discharge therein. Adams further indicated in her 56(F) affidavit that case law provided her with additional methods of establishing that the Village had received notice of her workers' compensation claim within the first 90 days, and stated that she needed time to conduct discovery and determine if the Village received additional written notice. The trial court dismissed the case without commenting on the request.

{¶ 64} In *Lamolinaro v. Kroger Co.*, 10th Dist. Franklin No. 87AP-137, 1987 WL 32167 (Dec. 29, 1987), the Tenth District Court of Appeals reversed a summary judgment that

had been granted to an employer, based on the employer's failure to receive written notice of a claimed violation within 90 days after the plaintiff's discharge. The Tenth District Court of Appeals stated that:

> Plaintiff was discharged on March 31, 1983; thus, the employer must have received written notice of a claimed violation by June 30, 1983. According to the materials submitted in summary judgment, on June 16, 1983, the employer received a written unfair labor practice charge in which it stated that plaintiff was discharged "because she attempted to process a workers' compensation claim and to assert rights under the state workmen's [sic] compensation laws." Given the liberal construction accorded the provisions of R.C. 4123.90 in favor of the employee as stated by the Supreme Court in *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, (see, also, R.C. 4123.95), there was obviously evidence upon which reasonable minds can differ as to whether the employer received the notice required by R.C. 4123.90 within ninety days after plaintiff was discharged. Furthermore, there were other notices given defendant that tangentially were related to the issue of notice. *Id*. at * 2.

{¶ 65} Subsequently, in *Ira v. Price Bros. Co.*, 10th Dist. Franklin No. 93AP-679, 1993 WL 387104, (Sept. 30, 1993), The Tenth District Court of Appeals concluded that the plaintiff had substantially complied with the notice requirements in R.C. 4123.90 by giving written notice of her claim in a form submitted to the Ohio Bureau of Unemployment Services. *Id*. at *3. *See, also, Keyes v. Car-X Auto Service,* S.D. Ohio, No. C-1-07-503,

2009 WL 1648909 (June 10, 2009), *3 (holding that summary judgment for the employer was inappropriate, due to notice in letters plaintiff had sent to the unemployment commission about worker's compensation retaliation, and factual issues about whether the defendant had received the notice within the 90 day period).

{¶ 66} Civ. R. 56(F) states that:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 67} Decisions regarding a Civ. R. 56(F) affidavit are within the trial court's discretion. *See, e.g.*, *Gates Mills Inv. Co. v. Village of Pepper Pike*, 59 Ohio App.2d 155, 169, 392 N.E.2d 1316 (8th Dist. 1978). "[A]n abuse of discretion most commonly arises from a decision that was unreasonable." *Wilson v. Lee*, 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, ¶11 (2d Dist.) "Decisions are unreasonable if they are not supported by a sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 68} In the case before us, the trial court failed to either consider or comment on the request for additional time. Therefore, the court's decision is not overtly supported by any reasoning process. Adams's action had been pending for a short period of time, and the request for additional time was reasonable, particularly in light of the cases that allow notice to be provided by unemployment filings and the like. Although the notice provided by the

service of the complaint within 90 days is sufficient, the fact that notice may have been received though filings with the unemployment commission is an additional reason why the summary judgment should not be sustained.

Copies mailed to:

Erica Ann Probst, Esq.
Lynnette Dinkler, Esq.
Hon. Douglas M. Rastatter